**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

v.                                                              Case No: 8:10-CR-419-T-30TGW

STEVEN H. BYLE and
JOSEPH MICHAEL COLE,

    Defendants.
_____/

# **ORDER**

    Before the Court are Defendants' Motions to Suppress evidence obtained during the searches of their respective houses. The motions contend the search warrants are invalid because the information in the supporting affidavits is inaccurate and insufficient. The motions (Dkts. #30 and #35) were referred to the Magistrate for a Report and Recommendation. After conducting an evidentiary hearing on the motions, the Magistrate submitted a Report and Recommendation (Dkt. #70) recommending that the motions be denied. Each Defendant has filed Objections (Dkts. #92 and #97) to the Report and Recommendation. For the reasons stated herein, the Court concludes the Objections of the Defendants should be overruled and the Report and Recommendation accepted.

    In summary, Defendants contend:

    (1)    the information contained in the affidavits used to obtain the search warrants is inaccurate and, when that inaccurate information is removed, there is no longer a sufficient basis to support probable cause;

(2) the officers have no credibility because their testimony at the evidentiary hearing was inconsistent with each other's testimony, and, in some cases, with their own written reports; and

(3) new case law from the Florida Supreme Court that a search warrant must be obtained before a dog sniff is conducted outside a person's residence supports a rejection of the Magistrate's Report, citing *Jardines v. State*, _____ So. 3d _____ (Fla. 2011), WL 1405080 (Florida), 36 Fla. L. Weekly S 147.

A brief description of the facts is helpful to understanding the objections from the Defendants and the Magistrate's recommendation.

**6630 Leeside Isle**

The search warrants in question were executed at two homes, 6630 Leeside Isle, Hudson, Florida (occupied by Steven Byle) and 12719 Chicago Avenue, Hudson, Florida (occupied by Joseph Michael Cole). A picture of Byle's home was received into evidence at the hearing as Exhibit 1. That photographs shows Byle's home to be a two-story structure with an attached garage extending from the home towards the street. An open driveway leads to the garage doors, and a sidewalk leads from the driveway along the left side of the garage to the front door of the residence. There is a gate across the sidewalk close to the end of the garage nearest the street where the garage doors are located. The front door of the home is approximately twelve feet inside the gate. Just outside the gate, attached to a supporting pillar, is a down spout drain and a mail box. To the left of the gate is a high wall covered by confederate jasmine in full bloom.

The Pasco County Sheriff's Office received a tip that the house at 6630 Leeside Isle contained a marijuana grow house operation. Detective James Dattoma, the lead detective

in this case, went to 6630 Leeside Isle to check on the tip. Detective Dattoma was assisted by Detectives John Sharp, Jr., Will Ferguson, and David Grant, a canine officer together with his dog Missy. All four officers testified that when they walked up the driveway and stood outside the gate, each could each smell a strong odor of marijuana. As Detective Sharp described it, the smell of marijuana was so strong that it had to be coming from the residence.

When the officers had been at the gate for just a few minutes, Byle walked out of the front door and approached the gate. Detective Sharp identified himself and told Byle they had received a report of a possible marijuana grow operation at his house. Sharp asked for permission to search his home. Rather than answer, Byle locked the gate, told him to "have a good night," and returned to the house.

Defendants take great issue with Grant's testimony that Missy alerted on the smell of marijuana coming from the house. They argue that since all of the officers did not see Missy alert, or even know what her alert signal was, and because the timing was so short between the time the officers arrived and when Byle came out of the front door of the house that Missy may not have had time to alert, it is highly suspect whether she did in fact alert.

In his affidavit in support of the search warrant, Detective Dattoma stated that the detectives smelled an odor of marijuana coming from the front door area of the residence, that Missy had alerted for the smell of narcotics at the front door, and the residence was using approximately two times the monthly kilowatt hours of electricity compared to surrounding residences. Defendants argue that these statements are factually misleading since the detective and his fellow officers were never at the front door of the residence. They never

got past the gate. Defendants claim those inconsistencies, together with the questions they raise about whether Missy actually alerted at the gate, and the lack of a discernable increase in electric usage, invalidates the search warrant. But just showing inaccuracies exist does not carry the day. If there are inaccuracies, a court is required to remove the inaccurate information and substitute the accurate information to determine if probable would still have existed. *United States v. Kapordelis*, 569 F. 3d 1291, 1309 (11th Cir. 2009), *cert. denied*, 130 S. Court. 1315 (2010).

The Magistrate acknowledged that the affidavit contained inaccuracies and omitted descriptive information about the residence. He said:

> Thus the affidavit incorrectly states that Missy alerted to the front door for the odor of narcotics, instead of at the mailbox. Further, the affidavit states that "[a]ll of the above Detectives" advised that they detected the odor of marijuana, when in fact one of the listed detectives was not present at the residence and, therefore, did not have an opportunity to detect any odor. Additionally the affidavit states that the detectives smelled the marijuana odor emitting from "the front door area," when it is more accurate to state that they detected the odor by the garage and front gate. Moreover, it would have been more precise and illustrative to state in the affidavit that there was a storm door attached to the front door, and that the front door was surrounded by a patio that separated it from the front gate by an estimated twelve feet.

Report and Recommendation, pp. 24-25.

The detectives were standing at the gate beside the garage, looking at the front door of the house. Byle had no expectation of privacy in that area since it was open to any visitor. The detectives smelled marijuana. It was reasonable for them to assume that the smell came from the house. That by itself is sufficient to support probable cause. *United States v. Hamilton*, 299 Fed. Appx. 878, 882 (11th Cir. 2008) (the recognizable smell of marijuana

gives rise to probable cause).

Byle argues that the confederate jasmine was in full bloom and gives off a strong, fragrant odor. That fact, even if true, does not eliminate the fact that the officers smelled marijuana. The officers were there about a tip concerning marijuana so it is understandable that they might not remember other smells. In short, the existence of jasmine in bloom does not eliminate probable cause for the search warrant.

Next, Defendants attack the credibility of the officers claiming the officers' testimony was contradictory in some of the details, and their testimony had to be corrected on the stand during cross-examination after their memories were refreshed with their reports. But, as Defendants acknowledge, the fact finder is given broad discretion in determining credibility of witnesses. "For only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). Here, the inconsistencies are not so strong as to undermine the credibility findings of the Magistrate.

For example, Byle argues that Detective Grant contradicted himself regarding Missy's second alleged alert in Byle's driveway, pointing to the following testimony: "As soon as she went to sit, the door came open. She came out of her alert." Transcript, p. 94. While Byle acknowledges that Grant had testified that Missy alerts by either sitting or lying down, he asserts that Grant contradicted himself:

> The contradiction is that Detective Grant specifically stated "[s]he *went to sit down*." - which is NOT an alert; in the next breath, he stated that she was in an alert.

Byle's Objection, p. 15 (document 97). This Court does not accept that as a contradiction and, even if it were, it would be inconsequential to the validity of the affidavit.

## 12719 Chicago Avenue

When the detectives executed a search warrant at 6630 Leeside Isle, they found a set of keys marked "Chicago," and documents, including hydroponics store bills, print outs for marijuana seeds to purchase, and a Withlacoochee electric bill with an address of 12719 Chicago Avenue. Detective Ferguson testified that the electric bill showed high electricity usage considering the small square footage of the house.

The detectives went to the Chicago Avenue address which had a fence with a gate. The house sat back from the fence and one had to walk through the front gate and up a dirt road several hundred feet to reach the residence. Defendant Cole contends that the gate was closed and the detectives violated his Fourth Amendment rights when they opened the gate from the inside latch and entered his premises. He also argues about inconsistencies in the officers' testimony and their reports concerning the details of smelling marijuana at his house. The Magistrate accepted the officers' version that the gate at Cole's house was slightly ajar, sufficient for a person to walk through the gate without having to open it, but not sufficiently wide for a car to drive through.

The officers walked through the gate and smelled marijuana at the front door area of Cole's house. The affidavit contained that information together with Missy's alert to the front door of the house for the odor of narcotics. Actually, Missy's alert had been to the rear of the house at a window rather than the front door. But, like Byle's motion, these

inconsistencies are insufficient to invalidate the probable cause affidavit. The officers' smell of marijuana by itself is sufficient to support the issuance of a warrant. Even had the gate been closed and the officers opened it to walk to the house, it would not invalidate the search. An officer is permitted warrantless entry by opening a closed gate and approaching a house to knock on the front door without violating the Fourth Amendment. *United States v. Taylor*, 458 F. 3d 1201 (11th Cir. 2006).

### *Jardines*

The Defendants argue that a Florida Supreme Court opinion that came out after the evidentiary hearing, and the day before the Magistrate actually filed his report, supports a rejection of that report. *Jardines v. State*, _____ So. 3d _____ (Fla. 2011), WL 1405080 (Florida), 36 Fla. L. Weekly S 147. *Jardines* is factually distinguishable and this Court disagrees with its legal analysis.

In *Jardines*, the Miami-Dade County Police Department received a tip that marijuana was being grown at the home of Joelis Jardines. A police detective went to the home and called for a canine unit. An officer arrived with a drug detection dog, placed the dog on a leash, and accompanied the dog to the front door of the home. The dog alerted to the scent of narcotics. The handler reported the alert to the detective, the detective went to the front door and, for the first time, smelled marijuana. The detective also observed that the air conditioning unit had been running constantly for about fifteen minutes without switching off. The *Jardines* court acknowledged that a hydroponics lab for growing marijuana uses high intensity light bulbs which create heat and cause air conditioning units to run

continuously. The Florida Supreme Court held that the dog sniff at a home, without a warrant, is a search barred by the Fourth Amendment. And, since the detective only went to the house to smell the marijuana himself after he was told of the positive alert, it concluded the smell by the officer was the fruit of the poisonous tree.

The case before this Court is distinguishable in that the officers smelled marijuana before the positive alert by Missy. Their testimony about the smell is not "the fruit of the poisonous tree" and provides probable cause even disregarding the positive alert by the dog. *United States v. Hamilton*, 299 Fed. Appx. 878 (11th Cir. 2008).

In its analysis in *Jardines*, the Florida Supreme Court reviewed three federal "dog sniff" cases: *United States v. Place*, 462 U.S. 696, 103 S. Court. 2637 (1983), *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S. Court. 447 (2000), and *Illinois v. Caballes*, 543 U.S. 405, 125 S. Court. 834 (2005). In each case, the United States Supreme Court held that dog sniffs are not searches under the Fourth Amendment. The Florida Supreme Court focused on the particular place of the sniff and concluded that, while a dog sniff may not be a search of a vehicle or luggage, it becomes a search when conducted in front of one's home. This Court disagrees. Without belaboring all of the myriad chameleonic situations that could shift a dog sniff from "not a search" to a "search" within the proscription of the Fourth Amendment, this Court accepts the Supreme Court meant what it said – a dog sniff is not a search.

**Conclusion**

For the foregoing reasons, the Court will accept the thorough and well reasoned analysis of the Report and Recommendation submitted by the Magistrate.

It is therefore **ORDERED AND ADJUDGED**:

1. The Report and Recommendation (Dkt. #70) of the Magistrate Judge is adopted, confirmed, and approved in all respects and is made a part of this order for all purposes, including appellate review.

2. Defendant Steven H. Byle's Motion to Suppress Evidence and Request for a *Franks* Hearing (Dkt. #30) is DENIED.

3. Defendant Joseph Michael Cole's Motion to Suppress Illegally Seized Evidence and Motion to Adopt the Motion of the Co-Defendant Byle and Request for Evidentiary Hearing (Dkt. #35) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on May 20, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2010\10-cr-419.suppression.wpd